The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A set of medical records from First Charlotte Physicians marked as stipulated exhibit 1 was received into evidence.
3. A Lowe's employee "request for leave" form marked as stipulated exhibit 2 was received into evidence.
 ***********
Based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was a seventy-six year old male who had completed two and one half years of college coursework in economics. Plaintiff had retired from employment as a finance director when he began employment as a sales associate in the electrical department for the defendant-employer.
2. Plaintiff's regular job duties included replenishing stocks on shelves on a daily basis as well as periodically rolling out products to the outside front section of the store.
3. Prior to July 1994, plaintiff had a history of coronary artery disease. Coronary artery disease is a condition where there is a narrowing of the coronary arteries. When an artery is narrowed for any reason, then a decrease in the blood flow can occur. Any increase in activity or demands on the heart for increased oxygen consumption may be unable to be met and result in chest pain. If the blockage of the artery is more complete, then actual damage to the heart can take place. Prior to July 19, 1994, plaintiff had pre-existing blockage of his right coronary artery.
4. On or about July 17 or 18, 1994, plaintiff began experiencing chest pain while at rest and while exercising. This pain was comparable to the pain that he had experienced years earlier when he had sustained a myocardial infarction (heart attack). Plaintiff was unable to stop the chest pain by consuming nitroglycerin tablets. Plaintiff experienced episodes of myocardial ischemia (chest pain resulting from restriction of the flow of blood as it passed through plaintiff's narrowed coronary arteries) during the two to three days prior to July 19, 1994.
5. On July 19, 1994 the temperature inside and outside of the Lowe's store where the plaintiff worked was not unusually hot.
6. On July 19, 1994, plaintiff performed his regular job duty in rolling out lawnmowers, log splitters and gas grills out to the front of the store. Plaintiff was not experiencing chest pain at the time that he began his activity. None of the items that plaintiff transported to the front of the store required an unusual degree of exertion in order to move them to the front of the store. Plaintiff did have to transport more items than he had done on prior occasions because fewer co-workers showed up to assist in the moving of products to the front of the store on that particular morning. Plaintiff experienced a recurrence of the chest pain that had been ongoing over the previous two to three days. After completing the task of transporting products to the front of the store, plaintiff began replenishing stock on shelves in his department. The lifting of each of these products from three pallets and placing them on shelves did not require any unusual degree of exertion. Plaintiff had to handle more products than on prior occasions because a co-worker who did this task with him was unavailable, and there was a greater amount of products to be stocked on this particular morning. Plaintiff experienced a recurrence of chest pain following this activity.
7. On July 19, 1994, plaintiff experienced at least one episode of myocardial ischemia as a result of the exertion required to perform his regular job duties in transporting stock to the outside front of the store as well as replenishing stock.
8. On the evening of July 19, 1994, plaintiff finally sought treatment for the chest pain that he had been experiencing over the past few days. Plaintiff received medications that helped to increase the ability of his blood to pass through his narrowed coronary arteries.
9. Plaintiff was hospitalized for the time period from July 19, 1994 to July 23, 1994 for the episodes of myocardial ischemia that he sustained. On August 25, 1994, Dr. Bullock, plaintiff's treating physician, released plaintiff without restrictions. Plaintiff reported to Dr. Bullock that he had no intentions of returning to work.
10. Plaintiff has made no effort to obtain employment with the defendant-employer or any other employer since having been released to return to work by Dr. Bullock. Plaintiff has not conducted a reasonable, but unsuccessful job search.
11. Given plaintiff's educational background and work experience, it would not be futile for plaintiff to locate suitable employment.
12. On July 19, 1994, plaintiff's regular job duties involved a greater volume of lifting resulting from a variation in the number of employees assisting the plaintiff as well as a variation in the number of products handled by the plaintiff.
13. There is a lack of competent, credible, or convincing evidence of record, however, to support a finding that the episode of myocardial ischemia caused by plaintiff's exertion in performing his job duties on July 19, 1994 resulted in any permanent worsening of his pre-existing coronary heart condition greater than any worsening that resulted from the non-work related episodes of myocardial ischemia that had occurred over the few days leading up to July 19, 1994.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
 CONCLUSIONS OF LAW
1. The mere fact that plaintiff was performing tasks which involved a greater volume of lifting than his ordinarily assigned tasks on one particular day does not automatically constitute an interruption of his work routine or the introduction of some new circumstance not a part of his usual work routine. Dyer v.Livestock, 50 N.C. App. 291; 273 S.E.2d 321 (1981); Reams v.Burlington Industries, 42 N.C. App. 54; 255 S.E.2d 586 (1979).
2. Plaintiff has failed to show by the greater weight of the competent, credible, or convincing evidence that he sustained an inability to earn any wages as a result of the episode of myocardial ischemia that occurred on July 19, 1994.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the undersigned enter the following
 ORDER
1. Plaintiff's claim is HEREBY DENIED.
2. Defendant shall pay an expert witness fees in an amount of $300.00 to Dr. Bullock and in an amount of $200.00 to Dr. Iwoaka.
3. Each side shall pay its own costs.
IT IS FURTHER ORDERED that this case shall be REMOVED from the Full Commission hearing docket.
This the _____ day of _______________, 1998.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER
JHB/kws